STATE OF NEBRASKA, EX REL. JOSIAH L. BROWN, V. LAWRENCE M. WELSH.

FILED OCTOBER 23, 1901.   No. 12,348.

County Supervisors in a District Containing a City, Are to Be Elected at Large. Under the provisions of article 4, chapter 18, Compiled Statutes, 1901, entitled "Township Organization" (Session Laws 1895, ch. 28), when a county is divided into supervisor districts in which are located cities of one thousand or more inhabitants, and which, by reason of population, are entitled to two superivsors, with or without contiguous territory attached thereto, such supervisors are to be elected at large by the electors of such city and contiguous territory, if any, and not by the electors of a portion of the city by dividing it into, and the formation of, two separate superivor districts.

ORIGINAL application for mandamus to compel the clerk of the county of Buffalo to print on the official ballots for the coming general election the name of the relator as a candidate for the office of supervisor of districts numbered six and seven, city of Kearney. *Writ allowed.*

*Frank E. Beeman,* for relator.

*Norris Brown, contra.*

HOLCOMB, J.

This is an original action in which the relator, by his petition for a writ of mandamus, seeks to have the clerk of the county of Buffalo print on the official ballots for

50

the coming general election the name of the relator as a candidate of the republican party for the office of supervisor of supervisor districts numbered six and seven, the same comprising the territory included in the corporate boundaries of the city of Kearney, which it is alleged is a city having a population in excess of one thousand inhabitants. The petition is demurred to. A proper decision on the issue raised by the demurrer calls for a construction of several sections of chapter 28 of the Session Laws of 1895, which is incorporated in the Compiled Statutes of 1901 as chapter 18, article 4, commencing on page 491. The act referred to provides for the adoption of township organization, and the division of the counties adopting such organization into supervisor districts, and the election of supervisors therefrom and restricts the number of supervisors to seven. Provisions are also made for those counties which, at the time of the taking effect of the act in question, had, under the pre-existing law, adopted township organization, to redistrict such county into seven supervisor districts, and to continue its organization in conformity with the law as modified and changed by the passage of the later act.

The city of Kearney, it appears from the allegation of the petition, was, after the passage of the act of 1895, divided into two supervisor districts, numbered six and seven, respectively, the main street of the city running north and south to the corporate boundary lines forming the line of division of the two supervisor districts. Heretofore it has been the custom—which, it is argued by the respondent, is according to law, and should be continued —to elect one supervisor from each of the two districts at the time required by law. At such election only the electors residing within the numbered district as thus established would participate in the election of a supervisor for that district. It is now insisted, and the petition demurred to is framed on the theory, that the supervisors to be elected from the city of Kearney, having within its boundaries, as it does, a sufficient number of inhabitants

to entitle it to two supervisors, should be elected by the electors thereof at large, and not by the electors of a portion of the city by dividing it into two separate districts, as has heretofore been done. In other words, it is claimed that the city can not, under the law referred to, be divided into separate supervisor districts, each one electing its own supervisor, but that one should be elected at large from the even or odd numbered district, as the case may be, the two numbers designating, and the supervisors being elected from, but one territorial division.

We prefer to call attention to several sections of the statute under consideration in an order different from their arrangement by the legislature. After the electors of a county have, by a majority vote, adopted township organization for the government of the county, in the division of the county into supervisor districts, it is provided by section 6 of the act that, in the event any city having one thousand inhabitants or more shall have enough inhabitants to form one supervisor district, then such city shall constitute one district, and that, in case the number of inhabitants is less than the number in other districts in the county, then so much contiguous territory shall be added to such city to give it a sufficient number of inhabitants for one supervisor district. By section 4 it is provided that in cities having more than one thousand inhabitants, and more inhabitants than the average outlying districts, the supervisor district in which such city is situated shall be formed by adding enough contiguous territory to such city so that the inhabitants of such city and contiguous territory shall be equal to the number of inhabitants of two of the other districts, and when the supervisor district is so formed in which such city is located the district shall elect two supervisors, to be elected at large within such district. It is further provided that, if any such city has more than the requisite number of inhabitants for two districts, then sufficient outlying territory may be added to such city to make three districts, and that the supervisors in such city districts shall be elected

at large, *i. e.,* by the electors of the entire city and those residing in the outlying territory added to such city to give it the number of inhabitants to entitle the district to three supervisors. In numbering the supervisor districts into which the county is to be divided, section 5 requires that in numbering the city districts formed as contemplated by section 4 they shall give such city district two or more numbers, one odd and one even number. In counties which had already adopted township organization under the law as existing prior to the passage of the act under consideration, it is provided by section 62*e* that a meeting of the board of supervisors shall be called by the county clerk, and that at such meeting the board of supervisors, or a quorum of the members thereof, shall at once proceed to divide the county into supervisor districts, and number the same; all of which shall be done as provided by sections 4, 5 and 6 of the act. The sections last mentioned, as will be seen by an inspection thereof, provide for the division of the county into supervisor districts by the county board immediately after the adoption of township organization by the electors of the county, while section 62*e*, above referred to, provides for the accomplishment of the same object by the county board of supervisors in counties then under township organization immediately after the passage and taking effect of the law as at present existing. Section 62*f* declares that the supervisors selected and appointed upon the organization of the county under the present law shall hold their respective offices until the next general election following their selection or appointment, and until the election and qualification of their successors in office. By section 62*g* it is provided that at the next general election following the adoption of township organization, or the division of any county then under township organization into supervisor districts, there shall be elected in each supervisor district one supervisor, who shall be nominated and elected by the qualified electors of the district for which such supervisor is elected, and the person receiving a plurality

of the votes cast for supervisor within the district shall be declared elected. Section 62*h* provides that at the next general election after the adoption of township organization and the division of the county into supervisor districts as contemplated by the act there shall be elected in each supervisor district one supervisor, and the supervisors elected in odd numbered districts shall hold their offices for one year and those elected in the even numbered districts shall hold their offices for two years. It is also provided that in double or city districts the ballots shall state which supervisor is elected for the odd and which for the even numbered district, and that each district shall thereafter elect one supervisor every two years, and each supervisor after the first election, as stated above, shall hold his office for the term of two years. To give the section last mentioned a literal interpretation would make it impossible to construe the statute as contended for by the relator. In those counties having cities with sufficient population, with or without contiguous territory, to entitle such district to three supervisors, two of them must be elected every alternate year, while the act apparently contemplates the election of but one supervisor in any one supervisor district at any general election. We, however, are not specially concerned as to this seeming conflict and inconsistency in the different provisions of the statute, because in the present instance the supervisor district in which the city of Kearney is situated is, according to population, entitled to but two supervisors, and therefore one representing the city as an even numbered district may be elected at one election and the one representing it as an odd numbered district at the succeeding election, and further than this we need not, at this time, extend our consideration of the question.

It seems reasonably clear that in the formation of the different supervisor districts contemplated by the statute the law is the same whether done by a board of county commissioners after the voters have adopted the township organization form of government, or whether by a board

of supervisors in counties then having township organization as provided by the law in force when the present legislation was enacted. It is equally clear that in the formation of supervisor districts the legislative intendment is that cities having one thousand inhabitants or more shall, either with or without contiguous territory, be entitled to one or more supervisors, according to the population within such district as compared with the total population of the county; and that where, by reason of population, such city, with or without contingent territory, shall be entitled to two supervisors, such district shall be given an even and an odd number, and that the supervisors elected by and from such district shall be elected at large,—that is, by all the electors residing within the district from which the two supervisors are chosen. "At large" is defined as "not limited to any particular place, district, person, matter or question." Black, Law Dictionary. The provisions relating to the question, we think, exclude the idea that a city shall be divided into two or more separate and distinct districts or divisions, even though the population be sufficient in number to entitle such city to more than one supervisor; and the right of representation on the county board of supervisors according to population is met by providing in such case for the election of two or more supervisors at large, and from but one division of territory, although including theoretically more than one supervisor district. No other construction can be given without doing violence to the language used, and ignoring altogether different provisions to which reference has been made. It is our duty to construe these several sections together, and to give force and effect to all their several parts, when no conflict exists, and thus give effect to the legislative will. To the writer, the legislation in respect of the questions under consideration is a discrimination in favor of the cities and against the rural portion of the counties. There is no more reason why a city should not be divided into supervisor districts, having due regard to boundary lines of wards, than a

county should be divided into districts, as is the law, having due regard to township boundary lines; and the same reason for such division exists with respect to one as the other. It consolidates the representation from the cities in matters pertaining to county government, and diversifies that of the country. It gives the predominating party, influence, or interest in a city an advantage over those predominating in the country. One is strengthened by being united, and the other weakened by being divided. It is, in principle, antagonistic to and inconsistent with other provisions of the law providing for the division of counties and cities into commissioner districts in those counties governed by the commissioner system. However this may be, it is not the province of the court to remedy the evil, if one there be. That is a matter which belongs to the legislature. While these considerations are fairly entitled to notice when there exists any serious doubt as to a proper interpretation of the statute relating to the manner in which supervisors are to be elected from districts in which a city is located having a population sufficient to entitle it either as a whole, or when divided into separate districts, to more than one supervisor, we are convinced that the question under consideration can be determined in but the one way, which we have indicated; and that the section of the statute bearing upon the question admits of no other construction than that in such cities the supervisors elected therein and therefrom and the district in which such city is located are to be elected at large, and not by the division of the city into different supervisor districts. For these reasons it is the duty of the county clerk to prepare the ballots so that candidates for the office of supervisor for the district in which the city of Kearney is located may be voted for by the electors at large, and a writ requiring him so to do will accordingly issue as prayed.

PEREMPTORY WRIT ALLOWED.